CATHERINE M. McGOLDRICK, Administratrix, vs. KATE McGOLDRICK and others.

### October Term, 1875.

MASTER'S SALE—RIGHT OF PURCHASER TO DEMAND TITLE.—A purchaser of two lots at a master's sale in an administration suit, who has received a title to and resold one of them before he had fully paid for it, cannot require the master to make him a title to the other lot, the purchase money of which. he has paid in full, until he has also paid the balance due on the first lot.

*J. C. Bradford,* for purchaser.

THE CHANCELLOR:—This is a bill filed by the adminis-tratrix and widow of John McGoldrick to administer the estate in this court, upon a suggestion of insolvency. Pending the litigation she intermarried with Joseph R. Marcowiez. Under decrees in this cause for the sale of realty to pay debts, Marcowiez, on the 13th of April, 1872, bought a lot on College street, for $900, and gave his notes, as required by the terms of sale, and the sale was confirmed on the 28th of May, 1872. He has paid his notes in full, and demands a deed.

On the 7th of August, 1872, he purchased another lot on Cherry street, sold by the master in this cause for the like purpose of paying the debts of the estate. His bid was $2,000, but before the sale was confirmed he agreed " to increase his bid on said lot by such a sum as may be sufficient, together with said $2,000, to pay off the balance of indebtedness of the estate of the said John McGoldrick which is not covered or provided for by previous sales herein; to pay and satisfy in full the present money value of the dower interest of the complainant in the proceeds of the various sales herein." This agreement was embodied in the decree confirming the sale. There is still due on the Cherry street lot, under this agreement, $666.66, for which the master holds Marcowiez's note. The master has executed to Marcowiez a deed to this lot, and Marcowiez has sold it.

Under the above facts the master submits whether Marcowiez is entitled to a deed for the College street lot until he has paid the residue of the purchase money on the Cherry street lot.

The argument relied on in support of the demand on the master is that the two purchases were entirely separate and distinct, and the master had no right to connect them. The position was plausible, and it struck me, at first, that the duty of the master was simply to obey the orders of the court in reference to sales made by him, and if there was an order directing him to make the deed to the College street

lot on payment of the purchase money, and the purchase money was paid, the right was clear. But further reflection has satisfied me that this is too literal and narrow a view of the subject. The master is acting, in such cases, not merely as clerk of the court, but as a special commissioner, and agent of the parties, in selling the land of the estate. The legal title is still in the heirs, subject to be divested under the orders of the court. It is clear that the court would not divest them of the legal title to any specific parcel of the land until the purchaser of that parcel had fully complied with the terms of the purchase. *Mitchell v. Brown*, 6 Coldw. 505. This is well settled, and would, doubtless, be conceded. But suppose the purchaser is indebted to the heirs in an independent transaction, not connected with the parcel of realty as to which the title is demanded, have the heirs any equity to retain the legal title of such land until the independent debt is paid? Our supreme court has expressly decided this very point in *Williams v. Love*, 2 Head, 80, 84. "If," says Judge Wright, in delivering the opinion, "we were to assume that the indebtedness to Charles I. Love, by McLemore, and his liability for him to Jones or Woodfolk, arose from independent transactions, unconnected with these lands, or with the partnership (between them), he (McLemore) could not have forced him (Love) to a conveyance of his (McLemore's) half of the lands, without paying his indebtedness to him, and freeing him from liability for him." In this case Love had bound himself to convey to McLemore one-half of certain lands, the legal title to which was taken to Love. McLemore conveyed his interest in these lands to Gwinn, to secure preëxisting debts, and Gwinn assigned to the complainant Williams. The court held that the heirs of Love could not be deprived of the legal title to McLemore's half of the land until McLemore had paid them in full his indebtedness to their ancestor, although created by transactions unconnected with the land. They held, further, that the heirs could not be deprived of the

legal title by Williams until Gwinn's indebtedness to their ancestor was first paid, although this indebtedness grew out of a partnership between Gwinn and Love in the iron business, having no connection with the lands in controversy. The court is acting for McGoldrick's heirs and creditors. in this case, and the master is merely the commissioner through whom the business is transacted. The heirs cannot be divested of the legal title until Marcowiez pays his debt in full. See *Smith* v. *Hunt*, 11 Rich. Eq. 269.